## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**JEREMY P. DEVAISHER,**

    **Defendant.**

**Case No. 22-CR-30037-SPM**

## MEMORANDUM AND ORDER

### McGlynn, District Judge:

Before the Court is Defendant Jeremy P. Devaisher's Motion to Suppress Evidence (Doc. 24). For the reasons set forth below, the Court **DENIES** the motion in its entirety.

### FACTUAL[1] & PROCEDURAL HISTORY

On January 23, 2022, defendant was a passenger in a black 2004 vehicle that was travelling near 110 block of Milton Road, Alton, Illinois. Alton Police Officer Samuel Pruett, who was in a marked squad car, observed the vehicle and ran a computer check on the Illinois registration "CL99803", which returned to a white 1996 Chrysler van, a violation of the Illinois Motor Vehicle Code. Accordingly, Officer Pruett attempted to pursue the vehicle in an effort to conduct a traffic stop. Shortly

---

[1] The facts were compiled from the motion to suppress and supporting memorandum of law (Docs. 24, 25), as well as the government's response (Doc. 32).

thereafter, the vehicle turned left into a residential neighborhood, made a few more turns, and then pulled into a driveway.

This entire "pursuit" was very short, less than one minute, and at no time, had Officer Pruett activated his overhead lights and/or siren. Officer Pruett pulled behind the black vehicle and radioed his location to dispatch. While doing so, defendant exited the vehicle and moved toward the front door of the residence. Officer Pruett, who was dressed in his full police uniform, exited his vehicle and ordered defendant to stop. Defendant kept walking and knocked on the front door before dropping a black bag. Officer Pruett ordered defendant to not enter the residence, but when the door opened, defendant picked up the dropped black bag and entered the residence.

Officer Pruett followed defendant into the residence. By this point, defendant had failed to obey a police officer, a misdemeanor violation. Officer Pruett followed defendant into the kitchen, struggled to handcuff him, and saw him attempt to discard the black bag he had previously dropped and picked up outside the residence. During the struggle, Officer Pruett deployed his taser before he was able to restrain defendant. Before being restrained, defendant tossed the black bag under the kitchen table, where it was later retrieved by Officer Pruett and found to contain approximately 70 sandwich bags that contained 80.3 gross grams of suspected crystal methamphetamine.

The homeowner, Pamela Bagby, told Officer Pruett that she did not know why defendant was at her home, but refused to cooperate any further. The driver of the black vehicle, Amy Minner, was driving on a suspended license, and was taken into

custody. Officers located a black replica "BB gun" in the front passenger door pocket where defendant had been sitting.

Following his arrest, defendant was Mirandized and provided numerous admissions at the Alton Police Department. He admitted to hearing Officer Pruett order him not to enter the residence but advised he did not want to get caught with the "stuff" on him. He also told investigators he was only going to Pam's house (Bagby) "for a minute" before Minner was supposed to drive him somewhere else.

On March 22, 2022, the Grand Jury indicted defendant with one count of Possession with intent to distribute controlled substance: methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) (Doc. 1). The charges arose out of the incident that occurred on January 13, 2022 (*Id.*).

On August 15, 2022, defendant filed a motion for extension of time to file a motion to suppress[2] the evidence seized during the afternoon of January 13, 2022 and the statements made during the morning of January 14, 2022 (Docs. 24-25). On August 23, 2022, this Court granted said extension of time, accepting the motion to suppress and supporting memorandum of law (Doc. 29). On September 7, 2022, the government filed its response (Doc. 32).

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

---

[2] On May 2, 2022, a pretrial Order was entered that required any motion to suppress be filed within 42 days of the arraignment that also occurred on May 2, 2022. Accordingly, a motion to suppress was due on or before June 13, 2022.

Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. Amend. IV.

Indeed, it is a basic principle of Fourth Amendment law, "that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart,* 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez,* 540 U.S. 551, 559, (2004)). But we have also recognized that this presumption may be overcome in some circumstances because "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Brigham City, supra,* at 403; see also *Michigan v. Fisher,* 558 U.S. 45, 47 (2009) *(per curiam).* Accordingly, the warrant requirement is subject to certain reasonable exceptions. *Id.*

One well-recognized exception applies when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona,* 437 U.S. 385, 394 (1978); *Kentucky v. King,* 563 U.S. 452, 460 (2011). This Court has identified several exigencies that may justify a warrantless search of a home, including the "emergency aid exception" that allows officers to enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Brigham City,* 547 U.S. at 403; see also *United States v. Santana*, 427 U.S. 38, 42-43 (1976) (police officers may make a warrantless entry onto private property to engage in hot pursuit of a fleeing suspect); *Georgia v. Randolph,* 547 U.S. 103, 116 (2006) (the need "to prevent imminent destruction of evidence" has long been recognized as a sufficient justification for a warrantless search). Additionally, the

United States Court of Appeals for the Seventh Circuit has found exigent circumstances justifying warrantless entry where police officers fear that a gun may be fired at them or others within a dwelling. *United States v. Ross*, 565 F. App'x 505, 509 (7th Cir. 2013).

Of note, those exigencies were all extended in felony matters; however, the Supreme Court has recently examined the application of the aforementioned exigencies with respect to fleeing misdemeanants. *Lange v. California,* __ U.S. __, 141 S.Ct. 2011 (2021). In *Lange,* which involved a warrantless entry into a garage after a driver suspected of DUI parked his vehicle, the Supreme Court held that there was no categorical rule to always justify the warrantless entry into the home of a fleeing suspected misdemeanant.  *Lange,* 141 S.Ct. 2011, 2024. Instead, an officer must consider all the circumstances in a pursuit case to determine whether there is a law enforcement emergency – to prevent imminent harms of violence, destruction of evidence, or escape – and where there is time to get a warrant, he must do so. *Id.*

As for the resulting statements, the Supreme Court of the United States created the exclusionary rule in order to "compel respect for the constitutional guaranty". *Davis v. United States*, 564 U.S. 229, 236 (2011) (citing *Elkins v. United States*, 364 U.S. 206, 217 (1960)).  The exclusionary rule encompasses both the "primary evidence obtained as a direct result of an illegal search or seizure" and, as claimed here, "evidence later discovered and found to be derivative of an illegality," or the so-called "fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237 (2016).

When applicable, the exclusionary rule forbids the use of evidence obtained by police officers in violation of the Fourth Amendment. *Davis*, 564 U.S. at 231-32. The Supreme Court has narrowed application of the exclusionary rule, holding that "[s]uppression of evidence has always been our last resort, not our first impulse", as it generates substantial social costs that can include setting the guilty free and the dangerous at large. *U.S. v Leon,* 468 U.S. 897, 907 (1984); *Hudson v. Michigan,* 547 U.S. 586, 591 (2006); *Utah,* 579 U.S. at 237.

## DISCUSSION

In his motion to suppress, defendant alleges that his Fourth Amendment rights were violated during the warrantless entry of the residence that resulted in the discovery of the methamphetamine, and thus the methamphetamine and resulting statements must be suppressed as "the fruit of the poisonous tree" (Docs. 24, 25). In support of his motion, defendant claims there was no consent to enter the residence, nor were there any exigent circumstances under *Lange* (*Id.*). Defendant also cites to the exclusionary rule for suppression of the statements (*Id.*).

The Government responds that defendant's motion should be denied because the police entry of Bagby's residence was justified under *Lange* (Doc. 32). Specifically, the Government argues that even though defendant was a misdemeanant, he was fleeing from Officer Pruett and there was: (1) potential for destruction of evidence; (2) potential for harm to others; and, (3) officer safety concerns (*Id.*). As such, the government asserts that the totality of the circumstances supported the warrantless

intrusion into the home (*Id.*). Accordingly, the government argues that the exclusionary rule should not apply (*Id.*).

First, Officer Pruett observed defendant drop a black bag and then pick it up right before entering the home. While it is true that Officer Pruett had no idea what was in the bag, given the defendant's exit from the vehicle, failure to obey orders to stop and not enter the residence, and picking up the dropped bag right before entering the home, it was objectively reasonable for Officer Pruett to suspect that defendant was trying to get away and/or trying to enter the home where he could destroy potential evidence. *See U.S. v. Dowell,* 724 F.2d 599, 602 (7th Cir. 1984).

"Reasonable suspicion" embodies less than probable cause or even a preponderance of the evidence, but more than a hunch. *United States v. Wilbourn*, 799 F.3d 900, 909 (7th Cir. 2015).  Indeed, once Officer Pruett caught up to defendant in the kitchen, defendant attempted to throw the black bag in an effort to separate himself from the contents. Had Officer Pruett waited outside to obtain a warrant, the evidence could have easily been destroyed.

Second, in addition to dropping and picking up the black bag and refusing commands to stop, Officer Pruett also observed defendant making "furtive" gestures at his waistline after he got out of the vehicle and while approaching the front door. Officers do not need ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception. *Michigan v. Fisher,* 558 U.S. 45 (2022).  Instead, the test is whether there was "an objectively reasonable basis for believing" that

medical assistance was needed, or persons were in danger, *Brigham City,* 547 U.S. at 406.

Defendant was trying to get away from Officer Pruett, and given his mannerisms, it was possible he was in possession of a firearm and could have resorted to violence. As such, it was reasonable for Officer Pruett to act swiftly to prevent violence and/or believe that person(s) were in danger. Officer Pruett also acted reasonably in following defendant into the residence for his own safety. Officer Pruett was alone and back-up had not yet arrived. The driver remained in the driveway and defendant had fled into the home where at least one occupant was observed, so it could have become a three on one situation.

An exigency exists and a warrantless entry is justified when a reasonable person would believe that entry or other relevant prompt action was necessary to prevent physical harm to police officers or other persons. *United States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005) (finding exigent circumstances for warrantless entry into home where police officers believed that the defendant could access potentially loaded gun inside); *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010) (noting that exigent circumstances exist where police reasonably believe that their safety may be threatened).

In closing, this Court does not need to address the exclusionary rule, which was designed primarily to deter unconstitutional conduct. *United States v. Curtis,* 901 F.3d 846, 849 (7th Cir. 2018). To the contrary, this Court finds the underlying evidence was not obtained in violation of the Fourth Amendment.  Additionally, there

were safeguards in place, including Miranda, yet the defendant spoke with the officers following his arrest. To exclude defendant's statements would exact a heavy toll on both the judicial system and society at large as it could suppress the truth and set the criminal loose in the community without punishment. *United States v. Calandra*, 414 U.S. 338, 348 (1974).

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion to Suppress Evidence filed by defendant, Jeremy Devaisher.

**IT IS SO ORDERED.**

**DATED:** September 23, 2022

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**